IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff

v.                                                      CRIMINAL 04-0362 (HL)

RICARDO CABRERA FLORES,

Defendant

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.  FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2004, the defendant was in the company of his wife, María Barbosa Martínez, on Acerina Street, in Amelia Ward of Cataño. They were allegedly having a "domestic violence dispute" on the street. According to the government, once Puerto Rico police arrived on scene, both tried to flee the scene, the woman in a Mitsubishi Nativa, in which a Smith & Wesson, serial number VZC-2255, Model No. 5906, loaded with fifteen (15) rounds was later found by a police officer. Another officer seized a Ford pickup belonging to the defendant. On top of the back seat, in plain view, there allegedly was a 7.62 rifle, Model SAR-1, with the serial number obliterated. Both weapons apparently belong to the defendant. Both were arrested.

On October 7, 2004, the defendant was indicted by a grand jury. The indictment consists of two counts. In the first count, the defendant is charged as a felon-in-possession, that is, having been convicted of a crime punishable by

CRIMINAL 04-0362 (HL)                    *2*

imprisonment for a term exceeding one year, with knowingly and unlawfully possessing in or affecting commerce a firearm, that is, a Smith & Wesson, serial number VZC-2255, Model No. 5906, loaded with fifteen (15) rounds; and a 7.62 rifle, Model SAR-1, with an obliterated serial number or ammunition, and with two (2) loaded magazines; which firearms or ammunition had been shipped or transported in interstate or foreign commerce, all in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In the second count, he was indicted for a violation of 18 U.S.C. § 922(k). Specifically, the indictment charges defendant with knowingly, intentionally and unlawfully possessing a firearm, that is, a 7.62 rifle, Model SAR-1, which had the manufacturer's serial number removed, obliterated, or altered, and has, at any time, been shipped or transported in interstate or foreign commerce.

On November 30, 2004, the defendant filed a motion to suppress the evidence seized during his arrest. (Docket No. 16.) In the motion to suppress, the defense paints another picture. On the day in question, Ms. Barbosa was following the defendant in the Nativa. The defendant then stopped his pickup, and Ms. Barbosa also stopped. Both then exited their vehicles, and met nearer to Ms. Barbosa's Nativa. As they argued, two police officers arrived on the scene. When asked if she would be pressing domestic violence charges, she said she would not. However, the police ignored the statement and placed the defendant under arrest and into the patrol car. Other police cars arrived and both vehicles were then searched, without the consent of either of the two. While firearms were found, defendant alleges they

CRIMINAL 04-0362 (HL)                3

were not in plain view.  Ms. Barbosa was not charged.  The defendant later admitted that both firearms belonged to him.  The United States filed an opposition to the motion to suppress on December 10, 2004.  (Docket No. 19.)  A hearing was held on January, 20, 2005.

Police Officer Joel Martínez Torres testified that he has been a police officer for one year and four months.  On the date in question he responded to a domestic violence call at Amelia Ward and saw the defendant hitting his wife upon his arrival on the scene.  The officer was patrolling Acerina Street when María Barbosa, the defendant's spouse, was being hit on the sidewalk by her husband.  The defendant's car, a Ford F-150 pickup truck, was parked in the middle of the street, blocking traffic.  There were 10 or 15 people around the scene.  The officer did not arrest the defendant because he was alone, and asked for backup via radio.  He testified that he separated the defendant from his wife, but neither searched nor handcuffed the defendant.  She said that there was no domestic violence and that she had no interest in a case.  When the officer asked the defendant what happened, he adopted an aggressive attitude.  Apparently the officer unexplainably returned to his car.  He then saw the defendant walking on the sidewalk away from the scene.  When the defendant hit her, she got into her car and followed the defendant in her vehicle, then got out.  Another officer arrived in five minutes.  Officer Charles Báez arrived at which time Officer Martínez told him about the domestic violence matter (Law 54), and that the wife had no interest in pursuing the case.  By then, Officer

CRIMINAL 04-0362 (HL)                    4

Martínez, the defendant and his wife were on the sidewalk.  Officer Báez told the

defendant's wife that the state had an interest and placed the defendant under

arrest.  The spouse, María Barbosa, then took off in her vehicle.  Officer Báez then

left Officer Martínez and went after María Barbosa, who had gone off running.

Officer Martínez took custody of the defendant, completed the arrest procedure, read

the defendant his rights, and placed him into the police car.  Officer Martínez then

went to help Officer Báez.  María Barbosa was then stopped, and Officer Báez noticed

a firearm in the wife's car.  He then arrested her.  Other police officers, municipal

and state, arrived on the scene.  Both were then transported to the police station.

At the station Officer Martínez heard the defendant say that they (the guns which

the officer knew had been found) were his.  Domestic violence charges were never

filed.  The defendant's wife was never charged with anything.  Officer Martínez

informed the ATF agent who took over the case that both the defendant and his wife

intended to flee.

        Officer Charles Báez has been a police officer for nine years.  He received a

1050 —emergency call— on September 9, 2004 and arrived on the scene on Acerina

Street within five minutes.  There was an argument going on.  He described the

scene as a mini-riot. He asked Officer Martínez what was going on and he explained.

Officer Báez then arrested the defendant. There was no visible firearm. Officer Báez

did not see the defendant as aggressive. Officer Báez never saw the defendant hit his

wife.  The defendant's wife said she had no interest in the case.  She ran to her

CRIMINAL 04-0362 (HL)                    5

vehicle, the red Vitara[1], and Officer Báez went to arrest her.  She did not walk.  She entered her vehicle and he grabbed her arm, at which time he saw a firearm, a 9mm stainless steel pistol, on the floor, on the driver's side.  He then placed her under arrest and seized the weapon.  The weapon was in plain view.  The vehicle was then searched to see if there were more weapons.  When Officer Martínez said there was another vehicle, the officers got the keys to the other vehicle from the wife, and when the officer opened the other vehicle, the Ford 150, and found a loaded AK-47[2] rifle on top of the back seat.  At the police station, ATF was called and the case was turned over to that agency.

María Barbosa Martínez, the defendant's wife[3], testified that on September 9, 2004, she left work at 4:00 p.m. in Bayamón and passed the Amelia area on the expressway at about 4:30 p.m.  She saw the defendant passing in a vehicle and went behind him.  He was with another woman.  She had been told that he was with a certain woman and the witness knew that she lived there.  He appeared to be coming out of her house when she first saw him.  She followed them along the marginal road until the corner of Acerina Street, where he stopped at the curved area, in the middle of the street, having made a left hand turn.  The witness parked her car parallel to the defendant's car, an F-150 van with highly tinted windows, close to the

---

[1]The testimony differs from the correct identity of the vehicle, a Nativa.

[2]The weapon here described is misidentified in relation to the indictment.

[3]In more uxoris.  They have been together for nine years and have a baby.

CRIMINAL 04-0362 (HL)                    6

sidewalk.  The woman that he was with took off.  He got out of the F-150 van and

started walking away.  The witness got out of her car, a red Nativa, and went toward

him demanding to know whom the woman was.  He continued to walk away, toward

her vehicle.  The witness demanded an explanation from him, and then got into his

truck and moved it to the curve since it was blocking traffic and she had noticed a

patrol car present.  (The defendant had thrown the key to her.)  At the time the

witness was moving the defendant's vehicle, the F-150, the defendant had gotten

into her vehicle, the Nativa, and was sitting in it.  After the witness moved the

defendant's vehicle, and walked toward him, the defendant got out of the witness'

vehicle and started walking away.  The witness then got into her vehicle and

followed the defendant as he walked away, going north.  She said that she was not

emotional, upset or angry during this exchange, although she might have been angry

when she first saw him with the other woman.  She did not scream.  She could not

have raised her voice because he was right in front of her.  It was a private

conversation. The policeman ran toward them and asked what was happening. The

witness had moved the F-150 so that the policeman would not interfere with them.

Officer Martínez asked what was happening.  She replied, "nothing."  When asked

if the defendant was hitting her, she said they were just talking.  The other officer

arrived.  Officer Báez asked Officer Martínez what had happened and Officer Baez

then said he was arresting the defendant. Other policemen arrived. The defendant's

spouse said the defendant had not hit her.  When the defendant is arrested, the

CRIMINAL 04-0362 (HL)                    7

witness walks to her Nativa when Officer Báez pushes her and says he's going to search her car, that there is something inside the car.  Officer Báez then finds a weapon which she had not seen.  He then arrests the witness, and puts her in the patrol car.  Her purse was then brought to her and Officer Báez searches the purse for the keys to the F-150.  He had said to give him the keys to the other car but she could not because she was handcuffed with the hands behind her.  She was taken to the station house and released the next day.

The last witness was Juan C. Mejías Zerpa.  He testified that as he left work on Amelia Street, en route, he found an F-150 in front of him which he could not pass.  Two cars were behind him.  He saw the defendant, with whom he is acquainted, walking.  He then sees the defendant's wife get into the F-150 to park it, thus eliminating the traffic jam.  He does not see a physical altercation.  He sees many policemen, some with long-barreled weapons, and the woman talking to the defendant.  There was also a female police officer.  The witness did not see when the defendant was arrested.  He saw the defendant and his wife speaking calmly, and was not always looking at them.

## II. STANDING

"The Fourth Amendment's protection against unreasonable searches and seizures extends only to those places and interests in which the defendant has a reasonable expectation of privacy." United States v. Lewis, 40 F.3d 1325, 1333 (1st Cir. 1994); United States v. Cruz-Jiménez, 894 F.2d 1, 5 (1st Cir. 1990) (citing

CRIMINAL 04-0362 (HL)                    8


Rakas v. Illinois, 439 U.S. 128, 140-50 (1978)).  A defendant moving to suppress

evidence must first establish that he has standing[4] to contest the constitutionality

of a search and seizure.  See Rakas v. Illinois, 439 U.S. at 138-39; United States v.

Lewis, 40 F.3d at 1333.  In order to have standing to contend that a search violates

his Fourth Amendment rights, the defendant must show that the search constitutes

a violation of his own constitutional rights and not those of another.  Rakas v.

Illinois, 439 U.S. at 138; United States v. Torres, 162 F.3d 6, 10 (1st Cir. 1998).  In

other words, the defendant has the burden of showing that he had a reasonable

expectation of privacy in the place that was searched or the item seized before a

court can enter into the merits of whether the search was illegal and determine that

the evidence should be suppressed.  See United States v. Romain, 393 F.3d at 68; see

also United States v. Paradis, 351 F.3d 21, 27-28 (1st Cir. 2003).  If the defendant

does not establish such a reasonable expectation of privacy, then the defendant has

no standing to suppress the evidence.  See United States v. Salvucci, 448 U.S. 83, 90-

92 (1980).

---

[4]The concept of standing has not had a place in Fourth Amendment jurisprudence since Rakas v. Illinois put the issue to rest close to three decades ago. Rather, matters of standing in the Fourth Amendment context are substantive in nature and are more appropriately referred to as defendant's threshold showing that he has a legitimate expectation of privacy in the area searched or the item seized in order to challenge the allegedly unlawful police conduct.  Nevertheless, courts continue to use the term "standing" in a somewhat imprecise manner when discussing this threshold substantive requirement.  United States v. Sánchez, 943 F.2d 110, 113 n.1 (1st Cir. 1991); see also United States v. Romain, 393 F.3d 63, 68 (1st Cir. 2004); United States v. Bouffard, 917 F.2d 673, 675 (1st Cir. 1990).

CRIMINAL 04-0362 (HL)                    9


In determining the requisite privacy expectation, courts have adopted a two-prong test.  See Smith v. Maryland, 442 U.S. 735, 740 (1979); Vega-Rodríguez v. P.R. Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).  A defendant has to demonstrate 1) that he or she personally has an expectation of privacy in the place searched, and 2) that his or her expectation is reasonable.  See Minnesota v. Carter, 525 U.S. 83, 88 (1998).  Said subjective expectation of privacy must be one that society is willing to recognize as objectively reasonable.  United States v. Mancini, 8 F.3d 104, 107 (1st Cir. 1993) (citing California v. Greenwood, 486 U.S. 35, 39 (1988)).

The reasonableness of an expectation of privacy varies according to the context.  United States v. Cardona-Sandoval, 6 F.3d 15, 21 (1st Cir. 1993).  Legitimate expectation of privacy by law has a source outside the Fourth Amendment.  Rakas v. Illinois, 439 U.S. at 143 n.12.  The Rakas Court suggested that the determination of a legitimate expectation of privacy can be made "by reference to concepts of real or personal property law...."  Id.  However, "'arcane distinctions developed in property and tort law' do not control the inquiry," United States v. Cardona-Sandoval, 6 F.3d at 21 (quoting Rakas v. Illinois, 439 U.S. at 143), but factors like ownership, possession, control, ability to exclude others and legitimate presence on the premises may be taken into consideration.  United States v. Cardona-Sandoval, 6 F.3d at 21.

After reviewing the evidence in the record, I find that the defendant has standing to assert a Fourth Amendment claim in relation to the search of the

CRIMINAL 04-0362 (HL)                    10

vehicle his wife was driving.  "[P]roperty rights are neither the beginning nor the

end of [the relevant] inquiry."  United States v. Sugar, 322 F. Supp. 2d 85, 94 (D.

Mass. 2004) (quoting United States v. Salvucci, 448 U.S. 83, 91(1980)).  The court

must inquire "not merely whether the defendant had a possessory interest in the

items seized, but whether he had an expectation of privacy in the area searched."

United States v. Salvucci, 448 U.S. at 84.  While the agent clearly had no probable

cause to arrest the defendant's wife, indeed, no witness articulated any credible

grounds for the arrest, the defendant had an expectation of privacy in the interior

of the vehicle which his wife was driving and which he in fact owned, according to

the testimony. She was definitely not fleeing and it taxes credulity to believe that

under the totality of the circumstances, she was fleeing, and that the agents would

perceive her actions as such.  Indeed, such is the case that she was never charged

at all.  Had she been arrested and charged, then she would also have  standing to

challenge the search of her car.  The defendant has clearly asserted a proprietary

interest in the car his wife was driving.  Therefore he has standing to challenge the

search of the Nativa.  He clearly has standing to challenge the search of the F-150

truck.

## III.  SEARCH INCIDENT TO AN ARREST

A warrantless search is presumptively unreasonable under the Fourth

Amendment.  See California v. Acevedo, 500 U.S. 565, 593 (1991); see also United

States v. López, 380 F.3d 538, 543 (1st Cir. 2004).  However, a warrantless search

CRIMINAL 04-0362 (HL)                    11

may be conducted if an exception to the search warrant requirement exists.  A search incident to an arrest has been recognized by the courts as a well settled exception to the search warrant requirement.  United States v. Robinson, 414 U.S. 218, 224 (1973); United States v. Doward, 41 F.3d 789, 791 (1ˢᵗ Cir. 1994).  The Supreme Court has held that a search may be incident to an arrest "only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest."  Shipley v. California, 395 U.S. 818, 819-20 (1969) (quoting Stoner v. California, 376 U.S. 483, 486 (1964)).  Thus, the question in this case is whether the searches of the defendant's F-150 truck and the Nativa were incident to arrest when the arrest was performed outside of the vehicles.  The Supreme Court has established that the scope of a search incident to an arrest is the person of the arrestee and the area immediately surrounding him.  Chimel v. California, 395 U.S. 752 (1969); Knowles v. Iowa, 525 U.S. 113, 116 (1998).  The Supreme Court, referring to the standard set forth in Chimel v. California, 395 U.S. at 762-63, established in New York v. Belton, 453 U.S. 454, 460 (1981), that the scope of a search incident to arrest extended to the interior of the passenger compartment of an automobile when the arrestee was an occupant of such vehicle.  Extending the scope of such a search even further, the Supreme Court recently applied Belton's rationale to an arrest in which the officer does not make contact with the individual until he has left the vehicle.  Thornton v. United States, 124 S. Ct. 2127, 2127 (2004).  The Thornton case expanded the scope of a search incident to an arrest,

CRIMINAL 04-0362 (HL)                    12

making no distinction between when the arrestee was either an occupant or a recent occupant of a vehicle. Thornton v. United States, 124 S. Ct. at 2132. The Court observed that for someone who is outside of his automobile, objects inside the vehicle may not be readily accessible or in the immediate surroundings, as is the rationale offered in Chimel for the relatively wide scope of a search incident to an arrest. Id. at n.3. Still, the Court held that keeping an easily understood rule for police, not dependant on estimates of each particular situation, justifies the broad generalized scope of a search incident to an arrest stated in Belton. Id. at 2132. In sum, the Court stated that "[s]o long as an arrestee is [a] 'recent occupant' of a vehicle ...,  officers may search that vehicle incident to the arrest." Id. (footnote omitted).

The defendant, Mr. Cabrera, was arrested lawfully. The evidence clearly established probable cause that the defendant hit his wife, and the atmosphere on Acerina Street was sufficiently charged that it would be difficult to believe that the defendant's wife was cloaked in a serenity which no other person would be cloaked in, and the very dynamics of the movements of the defendant and his wife belie a tale of peace and tranquility, a tale which includes a Ford truck blocking traffic on a well transited street, a crowd of bystanders, an irate wife of nine years, asking her husband, in a low voice, why he was with another woman who had just gotten away. Since the defendant was the recent occupant of not only his vehicle, (Ford F-150 pickup truck) but also the vehicle his wife was driving, there were sufficient,

CRIMINAL 04-0362 (HL)                    13

objective articulable facts to support the activities surrounding both vehicles, which were correctly subjected to searches incident to arrest, an exception to the warrant requirement of the Fourth Amendment.  See United States v. Holmes, 385 F.3d 786, 791 (D.C. Cir. 2004), cert. denied, 125 S. Ct. 1388 (2005).  The evidence obtained from the search of the Ford F-150 pickup truck and the Nativa is thus admissible as is any statement derived from the fruits of such searches.

## IV.  CONCLUSION

In view of the above, it is my recommendation that the motion to suppress be denied in its entirety.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

CRIMINAL 04-0362 (HL)                    14


          At San Juan, Puerto Rico, this 1st day of April, 2005.


                                        S/ JUSTO ARENAS
                              Chief United States Magistrate Judge